### In re SMITH.

(District Court, E. D. North Carolina. January 26, 1901.)

1. BANKRUPTCY—ALLOWANCE OF ATTORNEY'S FEES.

Bankr. Act 1898 contains no provision authorizing the allowance from the estate of a bankrupt in voluntary proceedings of fees to attorneys who appear for creditors.

2. SAME.

Bankr. Act 1898 presupposes that attorneys employed to file a voluntary petition in bankruptcy will arrange with their client for the prepayment of their fees for the services required in the ordinary course of the proceedings, and the provision of section 64b, cl. 3, contemplates the allowance from the estate by the court, in its discretion, of additional fees for extraordinary services which may have been required from such attorneys, which should be fixed at such sum as is equitable in view of the fees already received and the rights of creditors.

3. SAME—COMMISSION OF REFEREES AND TRUSTEES.

Referees and trustees are entitled to commissions only "on sums to be paid as dividends and commissions," and not on the gross amount collected.

In Bankruptcy. On consideration of final dividend sheet and allowances to officers and attorneys.

Aycock & Daniels, for bankrupt.

H. L. Stevens, for creditors and Stevens, Beasly & Weeks.

PURNELL, District Judge. This case is before the court on the final dividend sheet prepared by the referee and petitions by attorneys asking a reconsideration of the order heretofore made reforming said dividend sheet, disallowing one attorney's fee, and reducing the other. On an examination of the records sent up by the referee and clerk, it is now ordered, adjudged, and decreed: That all orders heretofore made in the cause by this court, including the granting of a final discharge, April 28, 1900, be, and the same are hereby, affirmed.

The attorney's fee now asked for by Messrs. Stevens, Beasly & Weeks for legal services rendered the trustee were in the original dividend sheet merely entered as "legal services rendered." An examination of the records discloses the fact that these gentlemen at every hearing in the bankrupt and state courts represented creditors. There is no provision in the act of 1898 (bankrupt law) which authorizes the allowance of an attorney's fee such as asked out of the bankrupt's estate in a voluntary proceeding. Section 64b, cl. 3, only provides for the allowance of one fee in a voluntary proceeding,—to the bankrupt; and this is discretionary. But it is said these attorneys have increased the assets of the estate by their professional services. This appears to be true, but under section 62a, Bankr. Act, the actual and necessary expenses of the officers of the court can be paid out of the estate only, when reported in detail under oath, and examined and approved by the court. There is no such report in the records.

Nor is there anything in the record showing these services were actually and necessarily rendered the estate or trustee, but, if increased assets resulted, such an increase was only incident to a vigorous contention in behalf of creditors, apparently, at least, adverse to the trustee, at a considerable increase of cost to all concerned. This attorney's fee is, therefore, disallowed, as heretofore ordered, and cannot be paid out of the estate. In Re Carolina Cooperage Co., 3 Am. Bankr. R. 154, 96 Fed. 604, this court has expressed views in regard to attorneys' fees which it is not necessary to repeat. It would be a strained construction to hold that congress intended by the adoption of section 64b, cl. 3, to provide for the full compensation to attorneys in bankruptcy proceedings at an inequitable expense and loss to creditors of the estate. Lawyers can, and do generally, take care of themselves, and protect their own interests. Many members of congress are and have been practicing attorneys. That all feel the courteous respect for members of the profession, universal among lawyers, goes without saying; but it is an unfair presumption to suppose they are oblivious to common practice, or legislate for those of the brethren who rely on the courts to make their contracts. It is common knowledge that one of the first things an attorney does when a client seeks to secure his professional services is to establish the relationship of attorney and client. All understand how this is accomplished. This relationship is frequently of great importance to both. The client unbosoms himself, and his attorney becomes the repository of secrets which would be disclosed to no one else. It must be presumed the legislative body had in mind this practice, understood by litigant and lawyers, and legislated accordingly. Courts are no less ignorant of the custom. The section should, therefore, be considered and construed as having been adopted with the expectation that attorneys, when employed to file a petition in bankruptcy, would, as a rule, require the payment of a fee as a condition precedent to having secrets touching the estate confided to them, and the labor incident to preparing schedules and conducting the case in the ordinary course of the court. When labors greater than contemplated in the ordinary course of such proceedings arise, the act vests in the court the discretion to allow out of the estate, under the reasonable supposition that the petitioner has made a surrender of all his property, an additional allowance for unforeseen additional professional services by the attorney, the discretion of the court to be governed by the circumstances of each case. That the court "may allow" does not vest a right in the attorney to any fee. It is a matter of discretion with the court. When asked to exercise this discretion, imposing an increased cost and loss on unfortunate creditors, it is not unreasonable to ask the attorney to disclose the amount his client has paid him, that the court may act equitably.

As to the petition of Messrs. Aycock & Daniels, therefore, as attorneys for the bankrupt, preparing the petition and schedules, attending meetings when the bankrupt was examined, and services which should have reasonably been contemplated when the proceedings were instituted, should be presumed to have been arranged as

one of the initiatory steps in the cause. There is nothing in the record on the subject, and, if a bad bargain was then made, the court should not attempt to remedy the mistake. That these attorneys' services from start to finish were worth much more than is asked is conceded. That is not the question under consideration. What services were reasonably contemplated under the original retainer should be regarded as having been paid for. What extraordinary, unexpected, additional professional services, not contemplated, but necessary by the subsequent action of creditors, were rendered, which should be paid for out of the assets of the estate? It is stated they went to Fayetteville to argue exceptions before the referee, and afterwards to Raleigh to argue the same exceptions, when a typewritten brief was filed; and prepared themselves to argue the same exceptions before the circuit court of appeals at Richmond, but the appeal was not pressed to a hearing, having been dismissed or withdrawn by consent. They represented the trustee in a suit in the superior court of Duplin county, instituted by creditors, and prepared the deed conveying the equity of redemption in the homestead. Taking into consideration the size of the estate, the allowance of $50 is not only reasonable, but a liberal allowance, and almost a punitive tax on the creditors who have proved their claims. Creditors are entitled to consideration in these proceedings. They have rights which the court must and others ought to respect, and their dividends should not be reduced more than reason and equity demand. When they instigate litigation or increase expense, they do so with full knowledge, actual or presumed, of the law, and should expect to have the estate in which they are interested depleted to the extent of the extra cost thus incurred. The former order reducing the attorney's fee allowed to $50 is affirmed.

The trustee is entitled to commissions on such sums to be paid as dividends and commissions, not to exceed, etc. Section 48, Bankr. Act 1898. The commissions of the trustee in the dividend sheet are calculated at the highest per cent. on the gross amount of the estate, —money collected. Under the law the trustee is not entitled to this. The trustee will be allowed 3 per centum on amounts to be paid as dividends and commissions, and no more.

The referee's compensation is fixed by section 40, Bankr. Act 1898, and general order 10 of the supreme court, at 1 per centum on such sums to be paid as dividends and commissions. In the dividend sheet the commissions are calculated on the gross amount collected. These two items in the dividend sheet must be reduced accordingly, and the commissions of these two officers calculated on amounts paid as dividends and commissions only, and not on costs or other payments. It is ordered that the dividend sheet be reformed in accordance with the foregoing, and submitted for approval, together with a copy of the dividend sheet referred to, but not in the record, as having been made March 20, 1900. And this cause is held for further order.