---

### In re CARR et al.

(District Court, E. D. North Carolina. June 16, 1902.)

1. **BANKRUPTCY—FINAL SETTLEMENT OF ESTATES—NECESSITY OF COMPLETE RECORD.**

The records in a bankruptcy matter at the time of the final closing of the estate should be full and complete, so that any one interested may at any time ascertain from them the full facts in regard to any given transaction, without extrinsic explanation; and until such a record is made by the officers chargeable with that duty, showing a compliance with the requirements of the statute and the rules of court, a final settlement will not be ordered.

2. **SAME—BALANCE SHEETS AND VOUCHERS.**

Upon final settlement of a bankrupt estate, a clear balance sheet should be presented, and proper vouchers should be filed, and the balance shown by such sheet should correspond with that shown by the statement of the depository, in which, by the statute and rules, all funds of the estate are required to be deposited.

3. **SAME—PAYMENT OF DIVIDENDS—CHECKS.**

Checks issued by a trustee in payment of dividends, if made payable to attorneys, should designate them as such, and they must also, in compliance with the rules, state the account on which they are drawn, to constitute proper vouchers corresponding with the dividend sheet. Checks payable to persons whose names do not appear on such sheet, which do not show what claims are covered thereby, or the authority of the payee to receive them, will not be approved as proper vouchers.

4. **ATTORNEY'S FEES.**

The power to allow attorney's fees is a judicial, not an arbitrary, discretion vested in the court. When the fee asked for is exorbitant, even when recommended by the referee, no fee will be allowed.

In Bankruptcy. On report for final dividend and settlement.

PURNELL, District Judge. This proceeding in bankruptcy is now presented on the third dividend sheet for final settlement. On the final hearing it is proper the whole record should be before the court, and in the case at bar all deemed essential has been considered. No final settlement can now be had. In Re Cobb (D. C.) 112 Fed. 655, irregularities in the final settlement of a bankrupt estate were pointed out, but for reasons therein stated the estate was settled, and it was there intimated a strict adherence to the rules would thereafter be expected on the part of the officers of the court. Now the consideration of final settlements of bankrupt estates is forced upon the

¶ 4. See Bankruptcy, vol. 6, Cent. Dig. §§ 874, 897.

court by irregularities, which cannot be permitted. Attention is again called to the fact that referees, trustees, and depositories are under bond. They must regard the rules as prescribed by the supreme court in the general orders, and by this court in the district rules, with which they are furnished. In Re Eagles, 3 Am. Bankr. R. 733, 99 Fed. 695, and Coll. Bankr. 301, this court, at some length, prescribed rules to govern in the first meeting of creditors, which it is believed have been followed, and of some benefit to referees, creditors, and attorneys. The statute and rules are sufficiently plain to be understood as to subsequent meetings, including the final meeting, when the estate should be closed, as estates are settled in probate courts, a clear balance sheet prepared, and proper vouchers shown, to be filed. When there is any reason to question a claim or account, it should be verified in regular form. Referees are not only bonded, but sworn, officers, dealing with trust funds, and making a record, which is to be a part of the record of the court, not only for the time, but for future years. By the dividend sheet now before the court, the referee reports for distribution $555.30. The report of the depository, the Murchison National Bank, shows a balance on deposit of $343.17,—a difference of $212.13. Where this amount is the record does not show. The statute and the rules require all the funds belonging to a bankrupt estate to be deposited in the designated depository. Bankr. Act 1898, § 47, subd. 3; Gen. Order 29; Dist. Rule 10. The first dividend sheet (September 7, 1901) shows amount on deposit $3,025.17; total amount to be paid out,—cost, commissions, and dividends,—$1,579.68; balance on deposit $1,446.19. On September 13, 1901, an order was passed approving this dividend sheet, and designating the referee to countersign drafts or checks of the trustee (Gen. Order 29; Dist. Rule 10) for the amounts set out in the dividend sheets. An examination discloses the fact that accounts have been grouped and checks drawn, not as specified, but to parties not creditors, but said to represent creditors. The checks are not payable to these parties as attorneys. This was not authorized by the order of court. The second dividend sheets were approved October 21, 1901, and the referee again designated to countersign the checks of the trustee. This shows there was on deposit $2,236.47. This is supposed to represent the balance and $668.30 collected since the first dividend, but there is no report of the trustee showing this. This, if correct, would make the total deposited to October 21, 1901, $3,694.47. The depository's statement shows a total deposited to the date of this report $3,388.84,—a difference of $305.63. The final dividend sheet was presented for approval June 2, 1902, when court was in session, and for reasons sufficient the former dividend sheets ordered returned, and a statement of account asked of the depository, together with checks filed. This dividend sheet shows, as before stated, $555.30 on deposit for distribution, but the account of the bank shows a balance of only $343.17,—a difference of $212.13. Many checks authorized and directed to be drawn do not appear, but checks unauthorized do appear to have been drawn, countersigned, and paid. General order 29 is specific, and means what it says, and district rule 10 is in accord therewith. General order 29 provides the checks drawn as contemplated shall state the account for

which they are drawn. This is not a new rule, but a part of rule 27 under the act of 1867, without material change. These. rules have been disregarded in the present case by the trustee, referee, and the depository. The rules are made for a purpose, which they serve only when observed. Take, for instance, draft bearing date November 1, 1901, drawn by the trustee, countersigned by the referee, and paid by the depository, the Murchison National Bank, in favor of Cook & Morrison for $237.76. In neither of the dividend sheets is there such a creditor entitled to this amount. The draft is not numbered, as required, and the court now, or any one interested hereafter, at best must guess from the date this draft was drawn under dividend sheet No. 2. Looking at the dividend sheet it is seen Cook & Morrison, Red Springs, N. C., have a claim allowed, the dividend on which is $75, for which a draft is authorized to be drawn. Looking further it is seen a draft is authorized to be drawn in favor of Mary E. Forbes, Lumberton, N. C., for $98.15. These two drafts aggregate $173.15. Cook & Morrison, Red Springs, N. C., are known to be a firm of attorneys at law, and it is stated they represent these claims; but the draft is not drawn or made payable to them as attorneys, no reference to the claim for which it was given appears, and this examination shows the claims as allowed are $64.61 short of the amount of the draft. Making another examination of the dividend sheet, still guessing, three claims are found, aggregating $64.61, said to be represented by Cook & Morrison, whether as attorneys in fact, by assignment, or otherwise, does not appear. Possibly all this can be explained. Court records should not require an explanation. They imply verity. The whole truth should appear as though it "were traced by landmarks and monuments visible to the eye." When they require an explanation, they excite suspicion, which should never rest on any court. The courts are dependent upon the confidence of the people for their usefulness, and anything which tends to affect this confidence on the part of any officer is detrimental to the court itself. As soon as known it should be corrected.

The facts cited and the remarks made apply to the following drafts of the same date: H. L. Cook, $1.40; R. E. Lee, $18.47; McLean & McLean, $36.43; B. F. McLean, $37.58; C. F. McRae, $57.34; Hinsdale & Lawrence, $245.25; Proctor & McIntyre, $199.48; and others. It is not always required of attorneys to file powers of attorney or even letters of attorney, though either may be demanded at any time, especially when paying out trust funds.

An application is filed and a recommendation is made by the referee for the allowance of attorneys' fees to the attorneys for the petitioning creditors and for the bankrupt. The petition for the first ignores a former decision on this subject. In re Smith (D. C.) 108 Fed. 39. The court does not feel justified in allowing either claim. Both are exorbitant. The recommendation, though much less, is entirely too much for the services which appear to have been rendered. The court in dealing with trust funds has a discretion which must be exercised, not arbitrarily, but conscientiously, in justice and equity to all. It has no right to bestow these funds because of personal friendship for members of the bar, or from any other motive, except for services ren-

dered in the premises. It is power vested in the court, not an arbitrary, but a judicial, discretion.

No further order will be made in this cause for the distribution of the funds on deposit until a record is made showing a balance sheet which can be understood, and the errors pointed out corrected, the record cleared of·items which require explanations, a final settlement, from which the bankrupt and the creditors can see what has been done with their money. This duty is incumbent on the trustee, the referee, and the attorneys, not upon the court. It does not appear any funds have been misapplied, and it should be said, in justice to all, the court does not entertain any suspicion to this effect, or wish to be so understood, but is pointing out irregularities which might cause suspicions in the future, and which can better be corrected now than hereafter. The officers of the court should be above suspicion. The court is attempting to point the way to keep them so.