---

In re LANG.

(District Court, W. D. Texas, Waco Division. February 12, 1904.)

1. BANKRUPTCY—ATTORNEY'S FEES.

Allowances to attorneys for services in bankruptcy cases must in all cases be made in view of the clearly disclosed policy of the law to reduce the expense of administering bankrupt estates to the minimum. An allowance of $75 made to the attorneys for a voluntary bankrupt for services, consisting principally in preparing and filing the petition and schedules; the estate being worth $7,500.

In Bankruptcy. On question certified by referee.

The question as to what is a reasonable allowance as an attorney's fee arises upon the certificate of the referee. The material facts to be considered are substantially as follows: Lang, the bankrupt, being insolvent, employed Hefley, McBride & Watson, as attorneys, to prepare and file, under the laws of the state, a deed of general assignment for the benefit of his creditors. The deed was duly prepared and executed, and for the service rendered the attorneys were promised by Lang, and allowed by the referee, a fee of $150. Subsequently certain creditors of Lang filed an involuntary petition against him, in which they sought to have him adjudged bankrupt. Lang, by his attorneys, Hefley, McBride & Watson, who associated with themselves Mr. Williamson, contested the involuntary proceeding, and upon the hearing the petition was dismissed. His attorneys thereupon filed a voluntary petition in bankruptcy, which resulted in his adjudication as a bankrupt, and in the bringing of his estate into the bankrupt court for administration. The attorneys submitted to the referee their claim for services rendered in the voluntary proceeding, and the referee passed an order allowing them $50. In his findings the referee holds: "That the necessity for filing the voluntary petition arose from the assignment being attacked by the creditors, and that a fee of $50, in addition to the fee contracted for, is ample compensation under the circumstances." So far as the record shows, the only service rendered by the attorneys in the voluntary proceeding, which is the particular and only matter under review, was the preparation of the petition and schedules, in addition to such professional advice as became necessary in connection therewith. Mr. McBride, a member of the firm of Hefley, McBride & Watson, testified before the referee that, prior to the execution of the deed of assignment, he advised and consulted with Lang almost daily, for the period of a month, in reference to the best course to be pursued by him in his failing condition, and that he regarded the fee of $150 as full pay for the services rendered, independent of the bankruptcy matters. According to the testimony of Mr. Williamson, the voluntary petition in bankruptcy was filed by Lang in order to prevent the creditors from instituting another involuntary proceeding against him. It was understood between Lang and his attorneys that in the bankruptcy matter the latter were to be paid such sum for professional services as should be allowed out of the estate of the bankrupt. The report of the trustee disclosed that he had received assets amounting to $7,500. The attorneys, being

dissatisfied with the allowance made by the referee, duly excepted to the order, and the question has been certified to the court for review.

Hefley, McBride & Watson and James D. Williamson, attorneys.

MAXEY, District Judge (after stating the facts). Section 64, subd. "b," cl. 3, of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]), allows an attorney's fee to the bankrupt in the following language:

"One reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases, to the bankrupt in involuntary cases while performing the duties herein prescribed, and to the bankrupt in voluntary cases, as the court may allow."

Referring to the policy of the present law touching the question of expense in administering the estates of bankrupts, it was said by the Circuit Court of Appeals for the Seventh Circuit:

"The policy of the present bankrupt act, in contrast with the provisions of the previous law, discloses clearly the design of Congress that the administration of bankrupt estates should be had at the minimum of expense. Under the former law much scandal had arisen because of the large cost of administering estates. The present act, so far as it specifies the amount of fees of officers whose services may be required in execution of the law, fixes them at a low figure, possibly much lower than is compensation for the service; but it is not for us, for that reason, to disregard the law, or seek to thwart the design of Congress, however inadequate we may think the compensation allowed. This thought is well expressed by the court below in the opinion filed. It is there said: 'The present bankrupt law was evidently intended to reduce to the lowest minimum the costs of administration, as regards fees of officers created by the act, as well as those of attorneys who may be called to assist the court in the preservation and distribution of the bankrupt estate.'" In re Curtis, 100 Fed. 792, 41 C. C. A. 59.

See, also, on the same subject, In re Harrison Mercantile Company (D. C.) 95 Fed. 123; In re Mammoth Pine Lumber Company (D. C.) 116 Fed. 731; In re Smith (D. C.) 108 Fed. 39; In re Mayer (D. C.) 101 Fed. 695; In re Goldville Manufacturing Company (D. C.) 123 Fed. 579. The policy of the present bankrupt act should not be overlooked by the courts in making allowances for counsel fees. "While the court personally," said Judge Philips, in the case of In re Harrison Mercantile Company, supra, in which observations this court concurs, "would be pleased to exercise a spirit of large liberality both towards the attorneys and its officers assisting in the administration of bankrupt estates, it must be understood that the court is impressed with a sense of the obligation, imposed upon it by the bankrupt act to so administer it as to preserve both the letter and the spirit of the statute, and produce the best results in behalf of creditors. Any other course taken by the courts in administering this statute will inevitably, as it has done in the past, invite additional legislation by Congress still further reducing the fees both of attorneys and of the officers of the court." It may not always be an easy matter to determine the exact value of the services of an attorney. Such value varies, as the value of the surgeon's work varies with the importance of the operation and the skill and delicacy required in performing it. Where the operation is simple and relatively unimportant, the fee exacted would be small in comparison with that

demanded for more serious work. So it is with the services of the attorney, and no fixed, absolute fee can be provided for all cases. The amount of compensation should be based, in ordinary cases, upon the nature of the case, the extent and character of the work actually performed, and the amount involved in the controversy. In bankruptcy cases, while these elements should properly be considered in fixing the compensation of the attorney, the policy of the act should be steadily kept in view, that is, that it should be administered with severe economy (In re Goldville Manufacturing Company, supra), so as to reduce to the lowest minimum the costs of administration.

Applying the above principles to the present case, it will be noted that the attorneys considered $150 as ample compensation for advice given and labor performed in the preparation of the deed of general assignment, although they were in almost daily conference with their client for the period of a month. The deed of assignment contained, or at least should have embraced, all the data necessary for the preparation of the petition and schedules in bankruptcy. The petition and schedules used by the attorneys were printed forms, and with the deed of assignment before them, and all requisite data at their elbow, there was little to do save clerical work in filling up blanks. The court is of the opinion that a fee of $75 would amply compensate the attorneys for services performed.

There appears in the record a paper purporting to be a schedule of fees prepared by Mr. Park, the referee for the Waco Division of the court. Touching this schedule the referee states, in his findings, that he uses it as a guide in determining the allowance of fees, but that he does not consider it a rule, or as binding in any case. Lest misapprehension may arise as to this fee schedule, the court desires to say that as a guide it is unreliable, and should be discarded, or materially modified, by the referee. In preparing his schedule the referee inadvertently failed to attach sufficient importance to the policy of the law, and, as a result, the fee bill is unduly generous at the expense of creditors whose rights, in that regard, scarcely received the consideration to which they were justly entitled.

In the present case a fee of $75 should be allowed the attorneys, and an order will be entered accordingly.