## BUFFUM v. PETER BARCELOUX CO. *

### SAME v. GELINAS.

#### Nos. 263, 267.

District Court, N. D. California.
July 29, 1929.

See, also (C. C. A.) 51 F.(2d) 82.

Devlin & Devlin & Diepenbrock, of Sacramento, Cal., George R. Freeman, of Willows, Cal., and H. B. Wulff, of Sacramento, Cal., for complainant.

Huston, Huston & Huston, of Sacramento, Cal., for respondents.

BOURQUIN, District Judge.

These suits are consolidated for trial.

Plaintiff is trustee of the estate of Henry Barceloux, bankrupt, and defendants are transferees of portions of his property alleged to have been made with mutual intent to hinder, delay, and defraud his creditors.

Without ranging as wide as does the evidence, by the latter it appears that in 1926 the bankrupt, later so adjudicated, was engaged in large operations in banking, real estate, ranching, etc., and had arrived at a crisis

*For opinion reversing judgment see 52 F.(2d) 598.

in his affairs. He had extensive properties and likewise debts. If not insolvent in the sense of the bankruptcy law, he was in that of the local law for that he could not pay his debts due.

Amongst his properties were 2,494 shares of the defendant in case 263, a family corporation the shares of which always had been owned by him, his brother George, his sister Cora, defendant in case 267, and three children of his deceased brother. Its book value was fully $36 per share. Of course, held in the family it had, strictly speaking, no market value. Moreover, it was subject to a reservation of all income from the corporate property (with perhaps some unimportant exception of surplus) in favor of the mother of Henry, and the others, evidently an aged woman of years undisclosed. Others of Henry's properties were certain stocks, unincumbered and of value some $2,400 which may be described as pledge 2, and certain bank stocks incumbered $13,800 and of value $24,100 and one share of defendant corporation unincumbered, which may be described as the Gelinas transfer. These three parcels are the subject-matter of the suits.

In 1926 Henry's properties were of value some $180,000 and his debts, including those alleged due defendants, other relatives, and attorneys, were about equal in amount if not some $191,000. In 1921, one Freeman secured judgment against Henry and one Donohoe, which in 1924 became final, and which less some $10,000 paid, in 1926 was in amount some $58,000. From finality until June, 1926, Freeman and Henry co-operated to make a portion of this judgment from Donohoe, with such poor success that at the date last aforesaid Freeman was insisting upon security from Henry. To that end, on June 30, 1926, to Freeman, Henry executed a trust deed of Lake county lands in which, with George, he had a considerable equity, and assigned to Freeman said 2,494 shares of defendant; this latter, however, subject to a claim of pledge to defendant corporation to secure certain debts due it from Henry. Freeman at once sought from the corporation (at all times theretofore managed by Henry, George, and Cora) an agreement that the corporate pledge would not be foreclosed save after 90 days' notice to him, which agreement, after some consideration, was refused. Henry testifies the assignment and proposed agreement created a "fuss," and that George and Cora "sold him out."

It is evident no stranger was wanted within the family corporation gates. Rapid action followed. As of June 29, 1926, but evidently of a time subsequent to the deed and assignment aforesaid to Freeman, defendant corporation executed to itself a certificate of said 2,494 shares as pledgee. July 3, 1926, George procured from Henry the parcel, pledge 2, as additional security for the defendant corporation, though at the time the 2,494 shares claimed to be pledged to the corporation were of book value more than twice any debts claimed due it from Henry, and near three times the specific debts for which they had been pledged.

July 7, 1926, Henry conveyed to his wife his equity of some $2,900 in certain lands, for $1,000 cash or check, though it is claimed that at the same time he owed her far more.

July 28, 1926, he sold his qualifying share in defendant corporation to Cora for $10, and resigned the presidency he had held for 14 years.

August 5, 1926, the defendant corporation assumed to foreclose the pledges aforesaid, therein including debts not secured by the pledge, and to have purchased all thereof for the amount due.

August 24, 1926, for $2,000, Henry transferred to Cora certain bank stocks pledged for $13,800, and of value $24,100. About this time Henry deposited of his earnings in his son's account, for "school expenses," and paid him money on a note executed by Henry, he says, to his mother-in-law in 1915, and by her given to the son's mother for his use.

In September, 1926, defendant corporation assumed certain debts of Henry's, and took over his collateral securities thereof. And in October, 1926, Henry assigned certain farming implements and his office furniture to his attorney, whereupon, he testified, he had no property left of any kind.

So, February 25, 1927, he was adjudicated a voluntary bankrupt; thereafter plaintiff was appointed trustee.

In respect to the pledge of the 2,494 shares to defendant corporation, it appears that if it was attempted to be made before Henry resigned as president, it was void for that the pledged certificate and any writing of pledge until said time were in his possession along with all other corporate documents and books. And by virtue of local law, possession by the pledgee taken thereafter and foreclosure and sale does not render the void pledge valid in respect to existing creditors of whom there were many and represented

82

by plaintiff herein. The foreclosure is invalid also for that, though assumed to have been made at public sale, no outcry was given, no bids invited, but said stock together with that of pledge 2 was quietly appropriated to defendant corporation as purchaser thereof for the amount due it, en masse; and it purports to have sold the pledged property for debts it was not pledged to secure. The pledge agreement provided that upon a sale to satisfy its specific debts, any surplus proceeds could be appropriated to any other debt due the pledgee from Henry. Payment from surplus, and payment by sale, are quite different. In the latter case, it is sale of a pledge for debts other than for which the pledge was made, and the transaction is void.

Moreover, taking into account all the facts and circumstances in evidence, all that makes for credibility of witnesses and weight to be given to evidence, all the undefinable impressions of the trial, the conviction is compelled that the transfers involved were made with intent by all parties to hinder, delay, and defeat Henry's creditors. When Henry was in desperate case, when appeared probability that his shares in the family corporation might vest in the stranger Freeman, George and Cora undoubtedly resented it, determined to prevent it, and, with Henry, immediately worked to that end. And it was but a natural development to aid him to dispose of all his other properties, to acquire them, to protect them from Freeman and other creditors. Their more or less contradictory testimony to their own innocency, fails to persuade, to outweigh all that gives that sinister aspect to their actions which establish their intent not only to acquire Henry's properties, to satisfy their claims, perhaps to protect him also, but also to foil efforts of his unsecured creditors to make their claims out of his properties.

The last suffices to condemn.

The court finds for plaintiff and against defendants.

The decree will provide for an auditor to take an account and determine the highest value of the property or stocks involved between their transfer to defendants and the audit. For so much will defendants account; and again following the local law, no part of the proceeds will be devoted to any of defendants' claims against the bankrupt, until all his creditors existing at the time of the void transfers are paid in full.