In re BARCELOUX.

MARYLAND CASUALTY CO. v. BUFFUM et al.

No. 7329.

Circuit Court of Appeals, Ninth Circuit.

Dec. 3, 1934.

Rehearing Denied Jan. 7, 1935.

John Ralph Wilson and Milton Newmark, both of San Francisco, Cal., for appellant.

Devlin & Devlin, of Sacramento, Cal., for appellee Buffum.

Horace B. Wulff, of Sacramento, Cal., for appellee Devlin & Devlin.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

GARRECHT, Circuit Judge.

In this case now on appeal to this court, the appellees appeared generally and filed briefs discussing the case upon the merits, and the matter was argued by all parties in open court and taken under submission. Thereafter appellees filed a motion to dismiss the appeal upon the ground that the court had no jurisdiction to entertain the appeal of the Maryland Casualty Company, which is also a creditor, for the reason that the right to appeal from the order allowing fees must be prosecuted by the trustee, or, in the event that he does not, then by permission given by the court to a creditor, who must appeal in the name of the trustee; that such permission was not requested, and no such order entered; and that therefore the court is without jurisdiction. In this case the trustee is made a party defendant. It also appears that the order of the District Court appealed from awards costs and interest against appellant, wherein this case differs from that of Maryland Casualty

Co. v. George R. Freeman, Adm'r, etc. (C. C. A.) 71 F.(2d) 1011, and other cases cited by appellee.

Motion to dismiss denied.

### On the Merits.

Before WILBUR and GARRECHT, Circuit Judges, and NORCROSS, District Judge.

GARRECHT, Circuit Judge.

This is an appeal from an order of the District Court made in the matter of the bankruptcy of the estate of Henry Joseph Barceloux, bankrupt, confirming the order of the referee in bankruptcy allowing compensation to the attorneys for the trustee on account.

Henry Joseph Barceloux is a bankrupt. Buffum is the trustee in bankruptcy, who, on March 16, 1927, employed and appointed Devlin & Devlin as attorneys for the trustee, and said attorneys are still acting in that capacity.

A petition was filed before the referee in bankruptcy by Devlin & Devlin, George R. Freeman, and Horace B. Wulff, asking for allowance of fees for services rendered as attorneys for the trustee in bankruptcy in the sum of $55,000. Of this sum $50,000 was asked as compensation for services rendered in an equity suit, being 40 per cent. of the amount recovered as a result of said litigation; the balance of $5,000 was for other services. The referee allowed the sum of $25,000 "on account and as part payment * * * reserving for future hearing and adjudication the total reasonable value of said services." The Maryland Casualty Company, appellant here, as assignee of a number of claims of creditors petitioned for a review of the referee's order by the District Court. After hearing, the court modified the order of the referee by directing the payment to be made to Devlin & Devlin alone, and as so modified affirmed the allowance. The order of the District Court also decreed that Devlin & Devlin recover from the objecting creditor the interest on $25,000 from the date of the allowance by the referee until paid. The present appeal is from this order.

Appellant contends: (1) That the allowance is excessive; (2) that the services were rendered upon the most part by Freeman, who has himself presented a large creditor's claim from which credits and securities were fraudulently concealed, and this taint and the general relationship of Freeman to the estate, to the trustee, and to the other counsel should operate against the magnitude of the fee; (3) that the charge of interest against the objecting creditor is unwarranted.

In allowing the fee, the referee disregarded the application of the attorneys for compensation for specific services, and made an allowance of 20 per cent. of $125,000, the amount actually recovered for the bankrupt's estate, and without which there would have been an estate to administer of the appraised value of $664.88.

The services rendered by the attorneys were all itemized in particular and at length, and consisted of those ordinarily rendered by attorneys in matters of bankruptcy, and in addition thereto and included therein were items of expense and for services in some ten separate suits in which the estate was involved. The testimony was that a minimum reasonable fee for each of such suits would be $250. In addition to these minor actions, the principal work done by the attorneys was the institution of two proceedings in the United States District Court to set aside transfers of property. At the time of the hearing on the matter of attorneys' fees, one of these suits was still pending before the Circuit Court of Appeals. In the other suit there was a recovery in the full amount of $125,000. This was the case of Buffum v. Peter Barceloux Co., which was before the District Court, 51 F.(2d) 80 (Cal.); twice before the Circuit Court of Appeals, 52 F.(2d) 598, 61 F.(2d) 145 (C. C. A. 9); and once before the Supreme Court of the United States, 289 U. S. 227, 53 S. Ct. 539, 77 L. Ed. 1140.

In the prosecution of the case through the various stages, 15 typewritten or printed briefs containing over 700 pages were prepared. Counsel were required to defray their own expenses and the cost for printing of briefs and court charges, in which they expended approximately $4,500.

The account presented is for a period from March 14, 1927, to June 27, 1933. During much of this time some one of the attorneys employed was occupied with legal problems involved in the affairs of the bankrupt estate, and for some of the time all of the attorneys were so engaged. Among the matters attended to by the attorneys and described at length in the transcript were extensive examination of records, interviews with witnesses, much necessary travel, documents and pleadings to prepare, negotiations had, hearings in bankruptcy before auditors and masters, meetings of creditors, contempt

proceedings, hearings on proceedings in intervention, motions and demurrers, trials in the District Court, the Circuit Court of Appeals, and the Supreme Court of the United States, briefs, further briefs, and additional briefs, stay orders, etc. Pages of the record set forth undisputed evidence of arduous and painstaking endeavor put forth by the attorneys in successfully accomplishing results against the intense and unremitting opposition of appellant's assignees, who now oppose payment for services which their perversity made necessary.

The opinion of the District Court quotes with approval from the findings of the referee the following:

"It is apparent that any litigation of this sort would necessarily have to be handled skillfully, and it is self-evident that such skill has been employed, with the result that the trustee has been successful in recovering the full amount claimed, to-wit, $125,000.

"Although this was a bankruptcy case, it resolved itself in effect into a contingency case, in that the attorneys who undertook the litigation risked their time and their $4,500 on success. Had the decision of the Circuit Court of Appeals been affirmed, Devlin & Devlin would have received nothing for their services and would have been out $4,500. Had the trustee been satisfied with the debtor's schedule, the creditors would have received nothing of much value. By the employment of skillful attorneys, who had sufficient money which they were willing to risk, litigation was started which resulted in the recovery of a very large sum of money, which, even after the payment of substantial fees to the attorneys for the trustee, will pay a considerable portion of the claims against the estate.

"There still remains a case before the Circuit Court of Appeals, which, if entirely successful, will recover approximately $60,000. This sum, with money on hand, will allow the payment of all claims filed against the estate in an amount of nearly 100%.

"In fixing the fee on account of the attorneys for the trustee, I considered all of the factors above mentioned, and particularly the results accomplished, and allowed what would figure about twenty per cent of the total recovery in a contingent case. Such an allowance is well within the usual contingency fees allowed or agreed upon between parties, and I consider that the allowance made is a reasonable one."

To the foregoing the court added:

"In determining reasonable compensation in a case such as this, there is to be considered the character, ability, and experience of the attorneys, the amount involved, the time consumed in dealing with matters of the estate, the difficulty and intricacy of legal propositions to be determined, the skill employed, the responsibility and risk of the attorneys where, as here, costs and expenses of litigation were advanced, and especially the results attained. The results attained here show that the attorneys for the trustee were not only able and skillful, but met every requirement necessary for the successful conduct of the legal matters appertaining to the bankruptcy estate. * * * *"

■ Appellant in its brief concedes that "the proper criterion for fixing compensation is the reasonable value of the rendered services." The authorities cited uphold this proposition, but, as we shall indicate, do not sustain the argument here advanced, that the attorneys' fees allowed were excessive and improper.

The first case cited is Watkins v. Sedberry, 261 U. S. 571, 43 S. Ct. 411, 414, 67 L. Ed. 802. In that case the attorney had entered into a contract with the trustee whereby he undertook to recover property of a bankrupt estate, indemnifying the trustee against damages and expenses, and the trustee agreed that any property so recovered should be first chargeable with the expenses incurred by the attorney, and the balance be then equally divided between them. The attorney claimed for fees about $49,000, half of $99,743.01, the asserted value of the property recovered, less expenses. The Circuit Court of Appeals in this case (Stokes v. Sedberry, 275 F. 895) held that a referee's order in voluntary bankruptcy proceedings authorizing a contract between the trustee in bankruptcy and his attorney for a 50 per cent. contingent fee, not made at a meeting of the creditors and wholly ex parte, without notice to any parties adversely interested, would not render such contract entered into by the trustee valid. The District Court had refused to allow the attorney a contingent fee of 50 per cent. of the amount recovered. The District Court vacated the contract and considered the amount of recovery as $29,000, and allowed the attorney a fee of $7,500. The case was brought to the Circuit Court of Appeals on the petition of the attorney to revise the order. The Circuit Court of Appeals sustained the District Court in abrogating the contract, but held that the District Court Judge in allow-

ing an attorney's fee of $7,500 was in error, because he had considered the amount of the recovery as $29,000, whereas the Circuit Court of Appeals thought the amount should be treated as $21,500.

Thereafter the case was carried to the Supreme Court of the United States by the attorney, who still insisted that his contract was valid and that he was entitled to recover a fee of $49,000, by placing a value of about $100,000 on the amount recovered for the estate. On behalf of the appellee, it was urged that the contract was void, as being champertous, and, if so, was void as being fraudulent, and therefore no attorneys' fees could be allowed. After an extensive discussion of the law against champerty and the statutes of Tennessee in relation thereto, the court held that the contract was invalid, but permitted the attorney to recover compensation on quantum meruit. It should be noted as hereinabove set out that the District Court had fixed the value of the property recovered for the creditors at $29,000, and had allowed an attorney fee of $7,500, which the Circuit Court of Appeals held should be reduced, based upon their finding that the amount of the recovery for the creditors should be estimated at $21,500. On this point the Supreme Court of the United States said: "The evidence is sufficient to support the allowance made in the District Court of.$7,-500 as reasonable compensation for the services of the attorney for the trustee." Based upon the value placed upon the property in the case discussed, the attorney fee here approved was for a larger percentage of the recovery than that allowed by the District Court in this case.

Another case cited by appellant is In re Robbins (D. C. Pa.) 41 F.(2d) 850. The facts there fail to show any extraordinary services to have been rendered by the attorney. The court said:

"* * * The affairs of the bankrupt were not unusually involved. The attorney rendered those services which are usually rendered by an attorney for the trustee who sells the assets of the bankrupt. In the instant case, the assets of the bankrupt were sold by the trustee, assisted by his attorney, for $10,000. * * *

"The attorney for the trustee has been, diligent and energetic, and the referee stated in his report. that it was due to the efforts of the attorney for the trustee that the sum of $10,000 was realized for the assets of the bankrupt. The Bankruptcy Act, while it puts limits on most other expenditures by

way of compensation, seems to have left a large discretion in the referee in making allowances to attorneys for trustees.

"Under the circumstances, the allowance of $600 to the attorney for the trustees was liberal, but was not excessive or unreasonable, and there was no abuse of discretion."

So in the case of In re Goldenberg (D. C. Pa.) 2 F. Supp. 727, 728, after making some wise observations as to the duties of referees in bankruptcy, the court goes on to say:

"In this estate the total amount realized was $5,222.50. The bankrupt property was sold by the receiver at public sale. The trustee had nothing to do but distribute the money. The business was not conducted by the receiver and there was nothing which required legal services, beyond ordinary administration. The matter was expeditiously disposed of and the goods brought more than the appraised value at the sale.

"The attorney for the bankrupt will be allowed a fee of $100. The attorney for the trustee and receiver will be allowed a fee of $300."

The foregoing case cannot be said to be helpful in determining the value of services such as were rendered in the case at bar, where, as a result of the diligence and ability of the attorneys through long and bitterly contested litigation, a very substantial estate was recovered for the creditors and without which there would have been nothing whatever for distribution.

Appellant also cites the case of In re Lang, 127 F. 755 (D. C. Tex.). In this case attorneys who had appeared for the bankrupt in successfully contesting involuntary proceedings in bankruptcy, and who thereupon filed a voluntary petition in bankruptcy resulting in adjudication, demanded a fee of $150. In certifying the question to the court, among other things, the referee stated: "* * * So far as the record shows, the only service rendered by the attorneys in the voluntary proceeding, which is the particular and only matter under review, was the preparation of the petition and schedules, in addition to such professional advice as became necessary in connection therewith. * * * *"

In passing on the question the court said: "* * * It may not always be an easy matter to determine the exact value of the services of an attorney. Such value varies, as the value of the surgeon's work varies with the importance of the operation and the skill and delicacy required in performing it.

Where the operation is simple and relatively unimportant, the fee exacted would be small in comparison with that demanded for more serious work. So it is with the services of the attorney, and no fixed, absolute fee can be provided for all cases. The amount of compensation should be based, in ordinary cases, upon the nature of the case, the extent and character of the work actually performed, and the amount involved in the controversy. In bankruptcy cases, while these elements should properly be considered in fixing the compensation of the attorney, the policy of the act should be steadily kept in view, that is, that it should be administered with severe economy, * * * so as to reduce to the lowest minimum the costs of administration.

"Applying the above principles to the present case, it will be noted that the attorneys considered $150 as ample compensation for advice given and labor performed in the preparation of the deed of general assignment, although they were in almost daily conference with their client for the period of a month. The deed of assignment contained, or at least should have embraced, all the data necessary for the preparation of the petition and schedules in bankruptcy. The petition and schedules used by the attorneys were printed forms, and with the deed of assignment before them, and all requisite data at their elbow, there was little to do save clerical work in filling up blanks. The court is of the opinion that a fee of $75 would amply compensate the attorneys for services performed."

So the case In re J. W. Harrison Mercantile Co. (D. C. Mo.) 95 F. 123, was likewise a claim for services rendered, not to the trustee, but to the petitioning creditors, in filing a petition in voluntary proceedings where adjudication was made without contest or trial. After the services had been rendered, but before the hearing, a general rule of the court had been adopted fixing the fee for such services at a sum "not exceeding $50.00 in the discretion of the court"; nevertheless the court waived the rule and allowed an attorney fee of $100. This case gives no support to appellant here.

In the instant case, there was no contract for a contingent fee or for any fee. The attorneys for the trustee petitioned for the reasonable value of services rendered. In such a case the fees allowed, to be reasonable, must take into consideration that the attorneys rendered services, compensation for which was inherently contingent, for, unless a recovery were had, there would be no funds in the estate from which remuneration could be made for the effort put forth.

The case of In re Levinson (D. C. Wash.) 19 F.(2d) 253, presented a situation very similar to the one here. The scheduled liabilities were $90,000, assets $200. Action was instituted to recover hidden assets. Litigation was had in the state superior and Supreme Courts, and in the United States District Court, the Circuit Court of Appeals, and the Supreme Court of the United States. During the progress of administration, the firm of McClure & McClure withdrew as attorneys for the trustee. C. L. Henry replaced them, and, at the time the opinion was rendered, was still acting as such attorney. The total net estate recovered was $165,608.49. The claims allowed were $96,701.22. McClure & McClure filed a claim for $42,500, C. L. Henry for $19,000, and one Max Hardman a claim for $5,000, for attorneys' fees. The referee found the reasonable value of attorneys' fees: McClure & McClure, $30,000; C. L. Henry, $12,500; and denied the claim of Max Hardman on the grounds that he had theretofore in writing disclaimed any compensation. Petitions in review were filed. The court, after discussing the case at length in summing up (page 256 of 19 F.(2d) said: "This is a very unusual case. At the inception of this estate there was no fund for the payment of the attorneys. The fees for their services necessarily were contingent, and the creditors being paid in full, the legal services rendered in the litigation, the burden of which rested upon McClure & McClure, covering a period of approximately six years, while they were acting as attorneys, were efficient and of great value, and should be fairly compensated. * * *"

Another case similar to the one here is In re Osofsky (D. C. N. Y.) 50 F.(2d) 925, 928. In that case, as here, there were no assets. A suit was instituted, during the course of which an offer of settlement of $4,500 was made and accepted; the compromise included the waiver of an alleged claim for $2,800; the referee allowed the attorneys $643.48, which was increased $433.15 by the District Court; in addition, the attorneys for the petitioning creditors were allowed $400. In making the allowance, the court said: "This is a little less than 33 1/3 per cent. of the amount involved in a case where their joint activities in a no asset case were of the greatest value to creditors. I think that if this amount is judged in the light of the elements for charges in bankruptcy which I have mentioned above, it will be found to

have been justified as an aggregate allowance to the two active sets of attorneys for their legal services in this case."

"The elements for charges" as set forth in the opinion were: "In bankruptcy cases, however, there seems to me to be another element which has to be considered. That is the fact that in bankruptcy very often futile quests for assets have to be made. Many times, however much ingenuity and time attorneys may expend, they may not be able to get anything for the estate by their efforts. It is then a question, as in salvage at sea, of no cure, no pay.

"When the efforts of attorneys cause a material increase in the bankruptcy estate, or, as here, create it, they should be well rewarded; otherwise there will not be any incentive to attorneys to put forth their best efforts in cases which appear unpromising."

■ The District Court awarded interest against the appellant, the objecting creditor, at the rate of 7 per cent. per annum from the date of the award of the referee, pursuant to the terms of the cost and supersedeas bond filed by said objecting creditor. As the petition to review or revise the order of the referee in bankruptcy does not of itself operate as a supersedeas, and appellant to secure a stay of execution executed this bond conditioned to pay to the trustee or his attorneys all costs, damages, and interest accruing, and it being apparent that the attorneys are damaged by the stay of execution, it was no error for the court to compensate for the loss by the allowance of interest until payment made.

■ On the question of attorney fees, the District Court must be sustained for another reason. The allowance was an administrative order appealable only under section 24b (11 USCA § 47b). Under this section our review is limited to the question of law— whether there was a manifest abuse of discretion by the District Court. We cannot determine disputed questions of fact. In re Diamond Fuel Co. (C. C. A. 2) 6 F.(2d) 773; In re Schulte-United (C. C. A. 8) 59 F.(2d) 553.

■ In determining a reasonable fee for the services rendered by the attorneys, it was necessary to consider the time spent, the intricacy of the questions involved, the size of the estate, the opposition encountered, the results achieved, the opinion evidence touching the reasonableness of the fee, and the economical spirit of the Bankruptcy Act itself (11 USCA). The District Court accepted the findings of the referee and approved the allowances made. We conclude that the evidence is sufficient in fact and inference to show that there was no manifest abuse of discretion by the court. Calhoun v. Stratton (C. C. A. 6) 61 F.(2d) 302; In re Irwin (C. C. A. 3) 174 F. 642.

■ Another contention made is that, because Freeman, one of the attorneys employed by Messrs. Devlin & Devlin, had another personal claim in this bankruptcy matter as executor of his father's estate, concerning which it is alleged that Freeman fraudulently failed to disclose payments made and securities received on account of said debt, it is argued here that this improper conduct taints the trustee and the duly accredited attorneys for the trustee, and should be taken into consideration in passing on this claim. We think the answer of the District Court upon that point is sufficient.

"It is objected that the fee is excessive, and that George R. Freeman, one of the attorneys employed by Devlin & Devlin, 'has fraudulently concealed from the trustee herein and from the Bankruptcy Court the receipt of large sums of money which should be credited on the claim presented herein by the estate of Frank R. Freeman, deceased, represented by said George R. Freeman as executor.'

"The Freeman claim is for $59,700, to which objections were filed by the Maryland Casualty Company, hearing was had before the referee, and decision is pending. This claim, its allowance or rejection, is in no way involved in the matter of the fee allowed to attorneys for the trustee. It is true that in the petition for fees, Devlin & Devlin also asked for 'fees and compensation' for George R. Freeman and Horace B. Wulff, 'attorneys associated with said firm.' But the referee made it quite plain during the hearing that he understood the situation when he said, 'I am allowing only one fee for the attorneys for the trustee, and I can recognize only the attorney for the trustee.' Devlin & Devlin were and are the attorneys for the trustee, and to them only could a fee be allowed. Any expense incurred by Devlin & Devlin for legal assistance in the premises is not a charge against the bankrupt's estate, and this court is not concerned as to arrangements Devlin & Devlin may have made for the payment for such legal assistance."

On this point appellant cites In re De Ran (C. C. A. 6) 260 F. 732, 741. In refusing to allow the attorney fee in that case, which sets forth facts substantiating the fol-

lowing conclusion, the court said: "* * * According to the facts preliminarily found by Judge Killits, and ultimately found by Judge Tuttle, petitioner, while thus acting as attorney for the estate and its creditors in rendering the service for which the allowance in question was made, was really working against their interests and impliedly without the knowledge of the court allowing the account. Under elementary principles (if these findings are sustained) petitioner was not entitled to receive or to retain the compensation in question. * * *"

In the case here it must be admitted, indeed the fact is not questioned, that Freeman, in assisting to recover the $125,000 for the estate, was not working against the interests of the estate, since, until such a recovery could be had, there would be no property belonging to the bankrupt out of which the claim he individually represented could be paid.

This case is also authority for holding that the Circuit Court of Appeals upon petition to revise an order of the Bankruptcy Court could not determine controverted questions of fact, but is limited to the review of questions of law.

In presenting this point, it is asserted in appellant's brief that "the major part of the indebtedness in this case falls into two camps, Freeman and the Barceloux family. These two groups are hostile." In further support of the argument, it is alleged that the claim represented by Mr. Freeman amounts to more than 77 per cent. of the presented claims, if the claims of the members of the Barceloux family, assigned to appellant, are excluded, but nowhere are the claims of this group waived. They are thus arbitrarily arranged as an assumed basis of similarity for cases cited.

It is claimed that "the situation is similar to that frowned upon by Judge Taft in the case of Weil v. Neary, 278 U. S. 160, 49 S. Ct. 144, 73 L. Ed. 243." That case was a controversy between the attorneys over the division of attorneys' fees paid and to be allowed in a bankruptcy proceeding. Neary was the assignee of Samuel Untermyer, who was retained as attorney for from 90 to 95 per cent. of the creditors. There was a rule of the District Court which provided that, unless specially authorized by the court, receivers and trustees in bankruptcy should not retain as their attorney the attorney of the bankrupt or the petitioning creditors, or of any creditors. This rule excluded Untermyer from being the attorney for the trustee. Thereupon, without advising the court, Untermyer entered into a contract with Weil, whereby Weil was to carry through the proceedings in bankruptcy under Untermyer's supervision, and was to receive as compensation $5,000. This agreement was afterwards modified to the extent that the amount of compensation would be enlarged as determined by Untermyer. Allowances totaling more than $142,000 were made in the bankruptcy proceedings. Untermyer decided that of the total amount so received Weil should have 60 per cent. and pay the remaining 40 per cent. to him. Weil refused to pay any part of such receipts. Suit was brought on this contract, and the District Court sustained the contention of Untermyer. Upon appeal to the Supreme Court of the United States, it was held that such a contract was void, not only because it violated the rule of the District Court, but also as being contrary to public policy and professional ethics.

In the case at bar, no rule of court was violated. The participation of Freeman as an attorney was open, and the services rendered admittedly were valuable and a benefit to the estate, and this is no controversy as to division of fees between attorneys, and, in any action taken in rendering the services for which compensation was allowed, there was no conflict with the interest of the estate.

In considering the principle here involved, this court in In re Rury (C. C. A. 9) 2 F.(2d) 331, page 332, in a decision by Judge Rudkin, said: "Petitioner also sought to disqualify the attorney who appeared before the state court for the trustee upon the ground that he had also acted as attorney for a creditor of the estate. The latter fact is denied, but the fact itself is not material; nor is it material to inquire whether the question is properly before us. There is no necessary conflict in interest between a creditor and a trustee in bankruptcy, and, if the two see fit to join forces and employ the same attorney in an effort to recover assets, the adverse party or a stranger will not be heard to complain."

There was a similar holding in In re Levinson, supra.

The order of the District Court is affirmed.